772 So.2d 1103 (2000)
TYSON FOODS, INC., A Self-Insured Employer, Appellant,
v.
Carl HILLIARD, Appellee.
No. 2000-WC-00095-COA.
Court of Appeals of Mississippi.
December 12, 2000.
*1104 Daniel M. Baker, Jackson; Chandra Lee, Clinton, Attorneys for Appellant.
John I. Donaldson, Yazoo City, Attorney for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. The Workers' Compensation Commission awarded temporary total disability benefits to Carl Hilliard, a former employee of Tyson Foods. Announced company policy required that an employee injured on the job submit to a drug test, but Hilliard refused. He was then terminated for misconduct. Tyson argues that this ended Hilliard's right to disability benefits. We find that Hilliard's refusal cannot be used to deny temporary disability benefits arising from the injury no matter what other negative repercussions that refusal may have.

STATEMENT OF FACTS
¶ 2. Tyson Foods employee Carl Hilliard was injured on the job when he was struck by a forklift in July 1996. After the accident Hilliard was transported to the emergency room of Methodist Medical Center in Jackson. There where he was treated by Dr. Timothy Estes for injuries to his face, head, neck, and right shoulder. He was also referred to an oral surgeon for further evaluation.
¶ 3. During his evaluation at the emergency room Hilliard was asked by a member of Dr. Estes's staff to provide a urine sample in accordance with Tyson's post accident drug screening policy. Hilliard replied that at that time he was unable to comply. The oral surgeon who was consulted, having overheard the conversation, introduced one liter of fluids intravenously while he was closing the wound on Hilliard's lower lip. Later Hilliard was again asked to provide a urine sample and he replied that he was still unable to do so. A letter from Dr. Estes's office to Tyson states that Hilliard, after repeated requests to provide a urine sample, indicated that he was not going to provide one because he had already taken a drug test when he began working for Tyson.
*1105 ¶ 4. At the Commission, evidence from the oral surgeon indicated that Hilliard had an infection in an area of the jaw that in 1990 had been repaired with a bone plate and wiring as a result of a broken jaw. He had released Hilliard to return to work twelve days after the accident as long as the wound was covered while Hilliard was in any food preparation area. Instead of being allowed to resume work, though, Hilliard had been terminated with an effective date of July 25, 1996, the day after the accident. The reason for the discharge was the insubordination of refusing to comply with the post accident drug testing policy. Tyson paid Hilliard temporary total disability benefits for the period of July 30, 1996 through August 5, 1996.
¶ 5. In May 1997 Hilliard filed a motion for immediate medical treatment seeking to have Tyson pay for an operation to remove the bone plate and wiring that had been placed in his jaw in 1990. The administrative judge ordered an independent examination by another oral surgeon. That surgeon's diagnosis was that the 1996 accident aggravated the old injury to the jaw and that the bone plate and screw needed to be removed. The administrative judge held that the employer was responsible for payment for the operation, which was performed in February 1998.
¶ 6. On February 5, 1998, Hilliard filed a motion for temporary total disability benefits arising from the July 1996 injury. Hilliard had been treated by Dr. Robert McGuire, an orthopaedic surgeon. Dr. McGuire determined that Hilliard's 1996 work injury had aggravated a mild degenerative condition in his cervical spine. The doctor had assigned Hilliard a permanent impairment rating of 4% and released him to light work on February 24, 1997. Administrative Law Judge Linda Thompson found that Hilliard was entitled to temporary total disability benefits from the date of the July 1996 accident until February 24, 1997, when Dr. McGuire released Hilliard to light duty work. Also awarded were disability benefits during a three week period in February and March 1998 as a result of the oral surgery necessitated by the aggravation of Hilliard's 1990 jaw injury.
¶ 7. Tyson appealed. Both the Commission and the circuit court affirmed the order.

DISCUSSION
¶ 8. Tyson raises two related issues. The first is that Hilliard cannot be awarded temporary total disability because he was terminated from his employment due to his own misconduct and not due to his injury. Secondly, Tyson argues that it is against the public policy of promoting a safe and drug free workplace to award Hilliard temporary total disability. We can agree that in myriad ways a strong public policy exists against the use of illegal drugs. Our charge is to determine whether the specific manifestation of that policy argued by Tyson is consistent with the compensation statutes.
¶ 9. Tyson concedes that Hilliard suffered a work related injury on July 24, 1996. What is disputed is the period of disability for which Hilliard should be compensated. Hilliard was released to work on August 6 as long as his facial wound was covered while Hilliard was in a food preparation area. The orthopaedic surgeon did not see Hilliard until November 15, 1996. He found maximum medical improvement to have been reached in February 1997.
¶ 10. Disability is an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment...." Miss.Code Ann. § 71-3-3(i) (Rev.2000). Tyson argues that Hilliard was not disabled within the meaning of this statute because he was terminated due to misconduct rather than because of his injury. There is both a factual and a legal dispute underlying this argument: was Hilliard factually capable of resuming work on the date that Tyson asserts, and *1106 what was the legal effect of a termination for misconduct?
¶ 11. As to the factual question, there was evidence that by August 6, 1996, or just two weeks after the injury, two physicians stated that Hilliard was then able to return to work without restrictions except to protect the mouth wound when near food. The orthopaedic surgeon first saw Hilliard on November 15, 1996, and evidence from him was that Hilliard reached maximum medical improvement on February 27, 1997. As we have previously detailed, the Commission awarded total temporary disability benefits beginning on the date of the July 1996 accident and ending on February 27, 1997. Another period of benefits applied to a three week period about a year later when oral surgery occurred. On the factual level, then, the principal question is whether there was substantial evidence to support that Hilliard should have been awarded any benefits for the period from August 5 until November 15, 1996, which is the period after one pair of doctors stated that he could return to work and the beginning of a period when a different doctor diagnosed him as having another physical limitation.
¶ 12. We find the principal relevant evidence to come from the doctor who rendered the opinion that Hilliard for several months continued to suffer from effects of the injury beyond what the first two physicians had diagnosed. The orthopaedic surgeon stated in a form affidavit perhaps prepared by the claimant's counsel that the time period for Hilliard's disability was July 24, 1996 through February 24, 1997. That is almost exactly the period upheld by the Commission. We further examined the medical records to determine if there is any support beyond the completed blank on a possible litigation form. The surgeon in a letter referring Hilliard to another doctor for examination stated that the July 1996 injury had aggravated a mild degenerative condition in the spine. Other documents indicated that the surgeon believed that after various medications and treatment Hilliard would be able to return to light duty. Based on these statements, we conclude that the Commission was within its discretion in evaluating evidence that Hilliard was because of the aggravation of the condition of his spine not meaningfully able to return to work on August 5, 1996.
¶ 13. We next turn to the legal issue raised. Tyson argues that once Hilliard refused to submit to a drug test, he was properly terminated for misconduct the day after the injury. That issue has been raised throughout these proceedings and rejected. What has never been rejected is the validity of a work-place drug policy nor the right of an employer to require drug testing after a workplace injury. If there are limitations on an employer's discretion in this area, they are not part of what we must decide today. Instead, the much narrower question for us is primarily a statutory one. Mississippi worker compensation statutes contain no provision that makes a condition of disability benefits the post-injury compliance with a requirement such as this.
¶ 14. The relevant statute stated that "compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease." Miss. Code Ann. § 71-3-7 (Rev.2000). Regardless of whether Hilliard had been slightly or egregiously careless, or whether his own, a fellow employee or a supervisor's negligence caused the injury, he is still entitled to benefits for that disability. An employee's possible negligence includes being intoxicated or impaired by other substances, legal or illegal. Such conduct is not an issue in whether the benefits for the injury arising on the job are payable. Should such conduct be discovered before it causes injury, then termination or other discipline of the employee may be appropriate. However, we find no statutory support for allowing these considerations *1107 to deny disability benefits once an otherwise compensable injury has occurred.
¶ 15. Tyson finds support for its position in a precedent that held that "termination due to misconduct does not support a finding of compensable total permanent disability ..." Sibley v. Unifirst Bank for Savings, 699 So.2d 1214, 1220 (Miss.1997). We find the Sibley point unremarkablea misconduct termination does not by itself prove a claim for disability. We are concerned with whether a misconduct termination disproves the claim. A post-injury termination for misconduct, even if the misconduct contributed to the injury, does not end the right to benefits.
¶ 16. We conclude by addressing Tyson's underlying argument that an award of disability benefits to Hilliard violates the public policy of promoting a drug free workplace. Our difficulty with the argument is that we cannot find that Tyson's right to impose drug testing procedures cancels the employee's right to benefits for work-related injuries. Cf. Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. ___, 121 S.Ct. 462, 468, 148 L.Ed.2d 354 (2000) (arbitrator's decision to reinstate truck driver who had twice tested positive for illegal substance use did not violate public policy under regulatory statutes, whose "remedial aims are complex.") Job-site negligence that arises from illegal drug use may be especially likely to cause injuries. Yet every area of law does not serve the same remedial purposes. The purposes of the statutes that we review in this appeal are to provide benefits for injuries suffered on the job. If workers' compensation law is to become part of the vanguard against drug use by denying benefits to workers suffering otherwise compensable injuries, that is for the legislature to decide.
¶ 17. We find that the legislature has made a decision, but it is much more limited. By statute, an employer may have a vigorous drug and alcohol testing program. Miss.Code Ann. § 71-7-1 (Rev.2000). Refusal to submit to a properly required drug test may justify the discharge of the employee. Miss.Code Ann. § 71-7-13(7) (Rev.2000). It is instructive, though, that the statute defines a misconduct discharge as being one based on "a confirmed positive drug and alcohol test," and not just on the refusal to take the test. Miss.Code Ann. § 71-7-13(3). A finding of misconduct would justify the denial of unemployment benefits. Miss.Code Ann. § 71-5-513 (Rev.2000). Nothing similar exists authorizing denial of disability benefits under workers' compensation law. Our task is to interpret these statutes, not amend them. We find no error and affirm.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY AFFIRMING THE WORKERS' COMPENSATION COMMISSION'S AWARD OF TEMPORARY DISABILITY BENEFITS IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.